Good morning, Your Honors. May it please the Court, Jeffrey Buchholz for NSO. I'd like to reserve three minutes for rebuttal, if I may. May I proceed? You may proceed, thank you. Thank you. The District Court found, based on NSO's undisputed evidence, that Facebook is trying to hold NSO liable for its official conduct as an agent of foreign sovereigns. Under that finding, NSO is entitled to conduct-based immunity. Facebook's arguments for denying immunity are inconsistent with this Court's precedent and with the purposes of conduct-based immunity for three reasons. First, the District Court held, and Facebook argues, that conduct-based immunity applies only when the judgment would be enforceable against a foreign state. But this Court held to the contrary in Dogen against Barak. That case sought a judgment against Barak personally, not against the State of Israel. And this Court held that conduct-based immunity applied  So to here, this case challenges NSO's conduct on behalf of its foreign state customers. Second, Facebook argues that conduct-based immunity categorically excludes agents that are entities, rather than natural persons. But Facebook does not dispute that conduct-based immunity protects the private agents of foreign sovereigns, and there's no principled reason to categorically exclude agents that are entities. After all, the point of conduct-based immunity is that it turns on whether the conduct at issue is attributable to the foreign state, not on the identity of the actor. Thank you. Did you request a suggestion of immunity from the State Department? We did not, Your Honor. There's no evidence in the record one way or the other from the State Department here. I'm just curious, why did you not request a suggestion of immunity? Well, I mean, the State Department sometimes weighs in on individual cases and sometimes doesn't. And as this Court's cases say, and the Supreme Court's cases say, there's a two-step analysis for immunity. The first is, has the government weighed in on the case at hand? But since that doesn't always happen, the second is, well, what is the law? And then the Court applies the law. I understand that, and we can go over that in just a second. But didn't you have an opportunity to request it? I mean, I suppose everyone has an opportunity to write to the State Department. But there's certainly nothing in the record here with respect to any communications with the State Department. And I'm not aware of the State Department having taken any position or being asked in any formal way. So the Court didn't ask for the State Department's views, and I'm not aware of the parties doing so. So under Samantar, which I think is present that we need to look at and kind of guides us here, where the government hasn't issued a suggestion of immunity, we have to ask, I suppose, whether the ground of immunity sought is one which the State Department has an established policy of recognizing. So how do we grant the immunity that you're asking for in this case, where there's no apparent example of the executive branch ever suggesting immunity for a private foreign corporation? Well, I think, Your Honor, there are plenty of examples of the executive branch laying out what it thinks the analysis is that applies to a question like this. And I would submit that the reason why there aren't cases involving private foreign entities acting as agents for foreign states that have been sued is precisely the novelty of the end run that the plaintiffs are trying here, where they know they can't sue NSO's foreign state customers. We're talking about the use of technology to conduct counterterrorism investigations. That's at the core of a state's discretion. So they know they can't get jurisdiction under the FSA against the foreign states. And so they sue the company that provides IT support to the foreign states. And so it's as if in the United States context, if the shoe were on that other foot, it's as if the United States conducted a military operation in some other country and someone didn't like how the U.S. conducted the military operation and sued the company that sold the missiles or the bullets to the United States and sought to get around the United States' immunity in that way. So I think the fact that there isn't an example that's directly on point of the State Department weighing in in a particular case in support of immunity is really neither here nor there, where we have the law that the United States has advocated in cases like Mattar against Dichter and Lewis and the government's amicus brief in the Supreme Court, all these briefs that we've discussed in our briefs here where the government lays out what it thinks the standard is. And under that standard... I find the argument that your clients are making here in this case remarkable. And I guess I'm following up on what Judge Mardia just said. In the over 200-year history of our country, we have no example of sovereign immunity being granted to a private company. And I mean, the context when that could happen is not new to our modern age. I mean, companies have been assisting governments for a very long time in lots of different ways. How is it that we would not have an example of this happening yet if this is something that was contemplated? So first, Your Honor, it isn't quite right to say that there isn't a single example of it. Butters in the Fourth Circuit, although the analysis was under pre-FSA, excuse me, pre-Savitar case law, where the court mistakenly thought, as this court and most courts had thought, that the FSIA itself provided for immunity for defendants that weren't themselves the foreign state, the substance of the analysis in Butters is really the same thing we're arguing for, and there was a private entity that was granted immunity. And so it's not quite right to say there's not a single example. But on the other hand, I think it's equally telling, or you could point out, so you could say it's equally notable that there isn't a single example on the other side of the equation. There's not a single example of any court ever, or even for that matter the executive branch, saying that entities are not eligible for conduct-based immunity. And if it were clear, as the other side says, that for 200-plus years entities haven't been eligible, well then someone somewhere would have said that in the course of those 200 years. That may be, but it seems like on that side of the coin, one explanation for why that hasn't happened might be that nobody's tried it because everybody knew or assumed that when you're talking about sovereign immunity, you're talking about a sovereign, not a private actor. Well, I mean, again, Your Honor, with respect, there's lots and lots of examples of private actors being granted sovereign immunity, foreign sovereign immunity, under the common law both before and after the FSAA was enacted. There are cases like Raya and Ivey, where private actors are nonetheless acting as agents of foreign sovereigns and are granted conduct-based immunity. And again, the whole point of conduct-based immunity, which is distinct from other immunity doctrines that turn on status, like diplomatic immunity or head of state immunity, the point of conduct-based immunity is that it turns on the conduct, whether the conduct is attributable to the foreign state. Because if you could get around the foreign state's immunity by suing someone who acted on behalf of the foreign state, well, there wouldn't be a whole lot left of foreign sovereign immunity. That's the point this court made in Chewitian, which was overruled by Savantar in holding that the FSAA itself provided immunity beyond foreign states to their agents. But the Supreme Court in Savantar went out of its way to say the FSAA did not displace the common law. The common law remains in effect. And the defendant there, although not entitled to immunity under the FSAA, because he was not a foreign state, he was an individual, might well be entitled to immunity under the common law. And so all we're asking is that the court apply the established standard under the common law as the court did in Dogan against Brock to the undisputed facts of this case. And on those facts, NSO is an agent of its foreign state customers. It's being sued for its conduct within the scope of that agency. And the issue that the district court ruled against us on, really, the only issue that the district court's decision turned on is how to apply this standard in Restatement 66F that this court applied in Dogan about whether the case seeks to enforce a rule of law against the foreign state. What this court held in Dogan, which, again, was a case that sought a judgment against Brock personally, not against Israel. There was no issue there about the judgment somehow binding the state of Israel. This court said... There was a... The government had come out and made a statement regarding a suggestion of immunity that seems quite significant in terms of distinguishing this case from Dogan, doesn't it? Well, yes and no, Your Honor. It's true that that occurred, but it's also true that the court, in its opinion, in Dogan, does not decide what level of deference was due to the State Department's suggestion of immunity because it said that under the law, the same result would apply even if the court wasn't bound by the State Department's suggestion. So all we're asking the court to do is apply the same legal analysis that it applied in Dogan where NSO is being sued for its conduct on behalf of foreign states. And the district court really ruled against us only for one reason. It mistakenly thought that the restatement standard of whether the case seeks to enforce a rule of law against a foreign state means whether the judgment would bind a foreign state. But that can't be right because if the judgment would bind a foreign state, then the foreign state is the real party in interest, is the defendant, and the FSA itself provides for immunity, and you never get to any question of common law immunity. Let me ask you. I understand that NSO refutes its declaration that it ever installed Pegasus on a device or operated Pegasus. I think I'm understanding that correctly. But it seems like a denial of any misconduct, not an assertion that any misconduct alleged was taken on behalf of a foreign government. So I wanted to ask you, what conduct alleged in the complaint do you believe the record suggests was committed on behalf of a foreign government? Yes, thank you, Your Honor. So if Your Honor looks at the declaration from NSO's CEO, this is the excerpt of record 52 to 55, Mr. Raviglio explains what NSO does and what NSO does not do. And it is absolutely the case that NSO does not operate the software on behalf of its foreign state customers. It does not decide who the foreign states should use this tool to conduct an investigation of or how to conduct those investigations. That is within the sovereign authority of the foreign states. What NSO does is it installs the software for the foreign states. It sets it up. It trains the foreign state on how to use the software and it provides ongoing support as an IT vendor would for updates, bug fixes, and ongoing support in response to questions about how to operate the software when the foreign state has questions. That's what NSO does. NSO doesn't operate the software itself and decide who to target or how to do so. It's the foreign state that does that, which is again why this case is so novel and why it's such an obvious end run around the foreign state's immunity. The injury that the plaintiffs claim is from the use of the software by the foreign states. The injury is that the claim is this is paragraphs 57, 64, and 73 of their complaint all say the same thing, a loss of goodwill, damage to reputation, and incurring expenditures to remediate the effects of the use of the software. Well, all that's caused by the use, which NSO didn't do. That's the foreign states. If anyone did it, it's the foreign states. What NSO does within the scope of its agency for its foreign state customers is install the software, set it up, train the foreign state on how to use it, and provide ongoing support. So to the extent anything that NSO did caused any injury to the plaintiffs and has any relationship even to any injury they're claiming, it's that conduct within the scope of NSO's agency for the foreign states. Your time is almost up, but I wanted to ask, what role do you think the restatement section 66 should have in our analysis here? If we find that the State Department doesn't have an established policy for this type of immunity, does that foreclose any need to consult the restatement, or do we go to the restatement anyway? Well, I think this court should apply the restatement 66-F the same as it did in Dogen. I think this court, you know, I'd look to it in some prior cases, but in Dogen the court very clearly applied it as if that set forth the standard that governs in a case like this. And although it's true that the State Department had supported immunity there, the court also went out of its way to say, we don't have to decide whether we're bound by that. We're going to apply section 66-F and find that it applies. That's what the court should do here. We referenced the restatement. I'm not sure that that was the primary basis for our decision in Dogen. Well, I mean, I think the opinion says – I'm sorry. Judge Nelson, did you – I think I had interrupted you before. Did you have any questions? It's okay. Well, okay. I'll throw – are there other clients other than the State that the NSO has, or is it – are the only clients they ultimately have State of Israel or other state entities? The only customers that use NSO's software are foreign states. NSO submitted a declaration to that effect. There's some confusion in the other side's brief to this effect because they attach to their complaint a contract between the government of Ghana and a reseller. But if you look at that contract, which they attach to their complaint, so it's part of the record, that contract shows that the government of Ghana is the end user, and it's only the end user, the government of Ghana, that would have any right to use the software. That's who would get the license. And so I guess this isn't in the record. The contract was actually never even consummated. That transaction was never consummated. But, you know, it may be that in some parts of the world you have to work through some local reseller under local law in order to deal with government. That doesn't mean that some private company is getting the software to use it. Only the government of Ghana, under that contract, would have gotten the software to use it. So it is absolutely the case, under NSO's undisputed evidence in this case, including the evidence the other side has presented, such as it is, that all of NSO's customers that use the software are foreign states. And all of NSO's conduct that's being challenged here is tied to that agency on behalf of foreign states. I would like to reserve a tiny bit of time, if I may, for rebuttal. So before my time runs out, if your honors have no further questions, I'll reserve the balance. You have five seconds, but I'll give you a few minutes, okay, for rebuttal. Thank you, your honor. Mr. Dreeben. Thank you, your honor, and may it please the court. NSO seeks in this case a novel form of immunity that has never been recognized under United States law. It seeks the immunity that has been accorded under the common law to natural persons who represent foreign states for their official conduct. NSO seeks to expand that concept in a radical new direction that would cover corporate contractors. There is no support for that form of immunity under the common law in the history of the United States dealings with foreign sovereignty. Can I ask, in the United States, there are ways for contractors to get immunity. Is that just a different analysis for purposes of sovereign immunity within the United States versus foreign sovereign immunity? So we shouldn't look to any of those cases as we try and develop this area of the law? I think, Judge Nelson, you should not look to those cases. First of all, the United States has recently explained in an amicus brief in the Supreme Court in the CACI case that it's not really sovereign immunity that's being accorded to the contractors. It's a form of protection of liability so that the United States can accomplish its own functions through corporate contractors. And that doctrine is subject to a number of stringent limitations, including that the contractor has to comply with the United States law. NSO originally sought to assert that kind of immunity, calling it derivative sovereign immunity. It had been analyzed that way by the Fourth Circuit in the Butters case before Samantar. It's abandoned that claim to the kind of, I'll call it immunity, modeled on U.S. contractor immunity, in part because it would serve no purpose in this case. Since the complaint alleges that NSO violated the Computer Fraud and Abuse Act and several California provisions, they could not prevail even if that contractor immunity were available. But importantly, as the district court recognized, it's a conceptually distinct doctrine. Foreign sovereign immunity rests on comedy and respect for the prerogatives of the political branches. As a result, it's been accorded when foreign sovereigns have come forward and claimed that immunity for themselves or their officials. And I think Judge Morgia's question was quite apt in this case because it points to a central flaw in NSO's thinking. NSO did not request a suggestion of immunity from the State Department as far as the record reflects. And more importantly, nor has any foreign state. Typically, the way these immunity claims are developed is that the foreign state comes forward to protect its own operations by seeking a suggestion of immunity from the State Department. And then we get the State Department's views on that question that are provided to a court. And as Judge Morgia pointed out in the Dogan v. Barra case, the State Department came forward with a suggestion of immunity. Here we don't have anything like that. NSO has not even identified the multiple foreign clients that it says that it works for and that it claims an agency relationship with. It's entirely opaque. And there is at this point no basis for concluding that any of the comedy interests that actually animate the foreign official conduct-based immunity doctrine apply in this case. So I would not suggest that the court could be guided by the protection accorded to U.S. contractors, but instead should look to what this court said in Dogan, quoting the Supreme Court in Republic of Mexico v. Hoffman, that when there is no suggestion of immunity, the courts look to the established policy of the State Department. And here I think it's worthwhile stepping back to look at how foreign and sovereign immunity doctrines evolved and how they work. There were originally two strands of these doctrines. One was on behalf of foreign officials who represent states as natural persons. Foreign states, like the United States, can only act through natural persons, and it's a logical extrapolation from foreign sovereign immunity to protect the officials that implement foreign policy as natural persons. The second strand was corporate or other organs of states that carry out foreign state policy. The common law recognized that form of immunity, but it was totally absorbed into statutory law when Congress passed the Foreign Sovereign Immunities Act. So to come back to Judge Hunsaker's question, there's never been a claim of corporate agency as a conduct-based common law immunity. When entities sought immunity under the common law, they did it as if they were the foreign state itself. And that body of law is now completely absorbed into the Foreign Sovereign Immunities Act, and NSO has not even claimed that it could satisfy the standards for entities under the Foreign Sovereign Immunities Act. So lacking any... Can I ask a follow-up question to that? What we just heard was that NSO only apparently works with foreign sovereigns as clients. Would it make a difference if they were working, you know, with private companies but also had, you know, some foreign sovereigns as their clients? But the fact that, you know, they are just solely focused, apparently, on working for foreign sovereigns, does that give them a greater claim to foreign sovereign immunity? Or in your opinion, it just doesn't matter? I think the fact that NSO purports to work for multiple foreign nations, and we've had no discovery, so we don't have any factual record to test that assertion, actually weakens their claim to agency-type immunity quite significantly. In the handful of cases where persons who were affiliated with foreign governments and had been asked by heads of foreign states to conduct diplomatic relations on their behalf, even if they lacked a specific official position, they did it on behalf of one state. And the Bank of China case that my friend cited is a good example of that. Israel's senior official in the intelligence world asked a former government official to intercede with a potential problem in the United States. And in that context, recognizing a natural person as an agent of the state for purposes of conduct-based immunity is logical. But what NSO does instead is operate as a private commercial enterprise whose main concern is to earn profits for its own shareholder. And in that context, it doesn't serve as an agent of anybody. It's a corporation incorporated under the laws of the State of Israel. It is not claiming immunity that belongs to Israel. It then develops markets and vends its product with a basis of private equity to support it to multiple foreign states. And it sells to those foreign states. It doesn't have a unilateral relationship with any single foreign state. It's a private multinational company that's selling spyware around the globe. And I think that context... If I can interrupt you a bit, Mr. Dreeben, can you explain the misconduct alleged in your complaint? When were WhatsApp servers improperly accessed, according to your complaint? During the development and testing phase of Pegasus or when Pegasus was uploaded to the WhatsApp's users or devices? Well, I think it's both, Judge Murguia. I mean, WhatsApp was the victim of NSO's development and testing of the Pegasus product, according to the complaint. Pegasus had to be developed through reverse engineering the WhatsApp app, which violated the terms of service. And then it was apparently tested. We have not had factual discovery to probe these, but that's what the complaint alleges. The attacks on the 1,400 human rights activists, journalists, political dissidents, diplomats, and others occurred presumably when WhatsApp was victimized by the use of Pegasus by the foreign states with the support of NSO. NSO doesn't dispute that it engaged in technical support of its clients. It monitors its clients' activities allegedly to determine whether they have complied with the restrictions and the contracts, which is incidentally a practice that puts NSO potentially at odds with its foreign clients and makes it look a lot less like an agent than a independent corporate actor. And we have not yet developed a record or developed our theories of liability in the district court because of this appeal. I had another question regarding what the district court have found, and I just wanted to ask you if you thought the district court was correct in finding whether or not NSO was acting in an official, whether it was undisputed that NSO was acting in an official capacity. Was the district court correct that that was undisputed? Your Honor, that is not correct. The pleadings below evolved in a way that obscures some of the reality of what the litigation actually shows. And because NSO has made a waiver argument with respect to our natural persons claim, I think it's going to be worthwhile for the court to look at ECFs 45, 55, and 62. That's the motion to dismiss, our opposition, and the reply. Now, what happened in those sequence of documents is that NSO relied exclusively on butters and derivative foreign sovereign immunity. It made no claim whatsoever in its motion to dismiss of what it now asserts as its sole claim, foreign conduct-based immunity, which is doctrinally distinct as the district court recognized. We opposed NSO's motion, and we did make arguments against NSO's claims that it was acting solely in an official capacity. And I think importantly for this purpose, if the court got to this issue, we sought discovery on it and made clear that we would be entitled to jurisdictional discovery if NSO had a valid basis for its immunity claim. Our primary submission was that it did not. I have another question. So if the government has not spoken on the issue, is that the end of the analysis here, you know, with respect to if there's an established policy? Yes, I believe that it is under Republic of Mexico versus Hoffman, under basic separation of powers principles, and this court's decision in Dogan versus Barrack. And so what role do you think that the restatement of 66 should have in this analysis? If we find the State Department does not have an established policy for this type of immunity, does that foreclose the need to consult the restatement, or do you think that restatement needs to be applied, as your friend has argued? I do not think this court needs to go on and look at the restatement. If the court follows the analysis in Samantar and the court's adoption of it in Dogan versus Barrack, as the court knows, there are two questions. Did the State Department suggest immunity? If not, does the immunity asserted fall within an established policy of the State Department? The burden is on NSO to show that it meets that standard. As the court explained in its 1940 decision in Hoffman, it could embarrass the United States government just as much to deny an immunity that it asserted as to extend an immunity that it has never recognized. And that is what NSO is trying to do in this case. NSO is really engaged in wordplay by saying that it's eligible for foreign conduct-based immunity because some cases have extended that to agents of foreign states. But every single one of those cases, as Judge Hensaker pointed out, involves natural persons, and there's sound reasons for natural persons to be treated differently from corporate entities. So if the court goes down that established route, that's the end of the case. If it gets to Restatement Section 65, our submission is that that doesn't help NSO either because Restatement Section 65 also restricts the kind of immunity that it's seeking to natural persons. We're only talking about one specific provision in the Restatement Section 65, Section F, which talks about immunities for any public minister, official, or agent of the state. And the examples that the restatement gives of officials and agencies are natural persons. There's no authority that's ever been cited that would extend agents to corporate actors. And that's a particularly implausible reading of Restatement Section 66 because Section 66G goes on to address possible immunities of a corporation that's created under the laws of the state and that's exercising functions comparable to those of an agency of the state. So the drafters of the restatement were well aware of the potential for corporations to be covered. They addressed it in Section G. And then Congress came along in the Foreign Sovereign Immunities Act and adopted different standards for corporate agents and actors that NSO cannot meet. So we're left with a Restatement Section that just doesn't address corporate actors as agents. And it looks like the United States has expressed disapproval of the restatement test recently and further disapproved of the test being applied in the manner in which the district court applied it here. Do we need to take that into consideration? I don't think the court needs to address it in this case, but I'd readily acknowledge that this court in Dogan v. Barrack went on to consider additional factors beyond the two that are in the restatement and the district court's consideration, namely whether a financial judgment would come out of the coffers of a state or whether the decision would apply a rule of law to the foreign state in the form of a judgment binding the foreign state. In Dogan, the court went beyond that, but I think the ways that it went beyond it are significant and differentiate this case from Dogan. There, the court noted that the official in question, Barrack, who is the Israeli minister of defense, had been requested by the Israeli prime minister to act on behalf of the state of Israel. His functions were defined by Israel's basic law. Israel ratified the defense minister's conduct after the fact, and the U.S. government filed a suggestion of immunity that validated that he had been acting in an official capacity. And those four features of the case made it plausible to conclude that a decision against Barrack would effectively be a decision against Israel, but none of those factors is present in this case. We have no suggestion of immunity. We have no foreign state that's come forward on NSO's behalf. We don't need to know who those foreign states are. So for all of those reasons, we think that the court should affirm. Yeah, I think there is a confusion among the courts that have addressed this conduct-based immunity post-Savitar as to what role the restatement should have in their analysis, and I was just curious to see what you thought there. Nelson, Judge Hunsaker, do you have any other questions for Mr. Trevino?  Would you address jurisdiction for a second? My sense of it is that that is resolved on whether the immunity that we're talking about is a complete bar to liability versus whether it could be a defense, which would be more situational. Is your position on that, I guess what I'm asking is, do you think that because they're pursuing a conduct-based theory that that tells us we're in the more situational box? Judge Hunsaker, I'm not sure that that alone should be the dispositive factor in this case. This case could reserve whether if a natural person, public official, came forward with a defense, that would be available for interlocutory appeal, which is an extraordinary difference. But the key thing is that the reason for according that kind of immunity to an individual official would be comedy towards a foreign nation and the officials that represent that foreign nation. And here, the large leap that NSO is making is to say that a private corporation has comedy interests that would need to be protected against an appeal at the end of the case, which is the normal route. And that comedy interest simply doesn't exist for a foreign corporation like NSO. We have no idea who it represents. It has not been protected by a cloak of immunity by a foreign government. So I think the narrowest basis to conclude that a collateral appeal is not warranted here would be that even if NSO were correct in its request for an extension of conduct-based immunity to corporations, which of course we think it's not, that kind of immunity wouldn't implicate the reasons why you would want to recognize an immediate interlocutory appeal as opposed to an appeal that could occur at the end of the case. And the final point that I would make on that is to the extent that the court is looking at whether conduct-based immunity is triggered because it would apply a rule of law to a foreign state to uphold a judgment against the official, that clearly is a rationale that would kick in at the judgment phase and not before. And the district court here did fairly carefully explain why she could impose a judgment against NSO that would not bind any foreign state and would not impose a monetary judgment on a foreign state. And so the kinds of things that NSO seeks to vindicate could fully be vindicated at the conclusion of a case in opposition to a final judgment. Thank you, Your Honor. Mr. Buchholz, we let Mr. Dreeben go five minutes extra, so I'll give you five minutes extra. Thank you very much, Your Honors. I'd like to start where my friend left off and try to explain again why the district court's analysis of whether this case seeks to enforce a rule of law against NSO's foreign state customers is incorrect. My friend said at the end there that the district court explained that it could fashion an injunction that wouldn't bind foreign states. We disagreed with that in the district court. That was a separate ground why we moved to dismiss. But be that as it may, that's not the standard under Dogen or the standard that makes any sense in logic for conduct-based immunity. If the judgment would be against the foreign state, the FSIA applies, and you never get to any issue about common law conduct-based immunity. How do we judge that up front? Because, I mean, it may be that some of the liability does rest with the foreign state because maybe the foreign state did do some of the activities, but maybe there's also some liability for NSO in how they marketed this and any other support. I mean, those facts haven't been developed. Why shouldn't we allow this case to proceed and then allow, you know, that would seem to be a natural defense for NSO to say, hey, we didn't actually do the activity that you're actually complaining. So, Your Honor, I guess what I would say is to the extent that any of the conduct by NSO or, for that matter, anyone else that the plaintiffs are complaining about didn't cause their injuries, then it just doesn't matter. All of the claims that they've brought in this case require injury as an element, and plus there's, of course, Article 3. So to the extent they're talking about NSO's own research to develop this software, that didn't injure them. All of their injury, according to their own complaint, was the expenditure of funds to respond to the use of the software and the injury to reputation and goodwill that they say that caused. Well, that's all tied to the use of the software. So the antecedent conduct that they say NSO may have engaged in on its own account as opposed to as an agent of the customers. By a state actor in Europe. The conduct that injured them had to be done by a state actor. It had to be done by a foreign state customer. The antecedent conduct that NSO may have done that they say NSO did on its own account, not as an agent, didn't injure them. And so it just doesn't really matter. Well, I think that's the problem. I mean, you may have a pretty good defense on some of the substantive claims, but is it 100%? And that seems to be what we're being required to ask and address. I mean, separate and apart from whether a corporation or under what circumstances a foreign corporation could be entitled to the immunity, we're sort of being asked to put the cart before the horse and figure out whether 20% of the harm was caused by NSO's independent action or 0% or 100%. And that seems like that should be developed after discovery and further litigation. Well, Your Honor, two points. First, I think if you look only at what's in the plaintiff's complaint, at their own description of their own alleged injury, the injuries they claim are from the use of the software. They don't claim any injuries, and I don't know how they could in logic, but they don't claim any injuries that are from conduct that can be separated from the use of the operation of the software. So I don't think that it's premature for that reason looking at their own documents or their own complaint to say that the injury that they caught, that they claim that this case is about, was caused by, if anyone, by the foreign states. Second, this court has emphasized in multiple cases involving foreign sovereign immunity that one of the things that foreign sovereign immunity is supposed to protect against is discovery, right? It's an immunity from suit, as this court emphasized in Dogen. So you can't just lightly go into discovery when a foreign sovereign immunity issue is claimed. And here I think it's really important for Your Honors to look, if this is an issue that's important to Your Honor's decision, to look at the papers from the district court that my friend suggested that Your Honors look to because Your Honors will see that Facebook, one of the biggest, richest, most powerful corporations in the world, it's not a pro se litigant who needs to be indulged for its litigation choices. Facebook didn't ask for discovery. They didn't say, I mean, excuse me, let me rephrase that. They had one throwaway line in their opposition where they say, we think we win, if we don't win, we like discovery. That's not enough. That's not fair to district courts. And as a factual challenge to subject matter jurisdiction, which is what this was, that invokes summary judgment procedure. And in any summary judgment case, even when not involving something as sensitive as foreign sovereign immunity, a party seeking discovery can't just say, well, I think I win, but if I lose, I'd like discovery. You have to say what discovery you need, why you need it, what you think it will show. And this court has said that the district courts should be circumspect in allowing discovery in cases involving foreign sovereign immunity and allow discovery only on facts that are critical. They didn't seek discovery in the district court. They just had one throwaway line in their opposition. They didn't think they needed discovery. They chose to oppose our assertion on legal grounds. And that's why we're now here on appeal on these legal grounds. And I'd like, if I can make one final point, my friend talked a lot about comedy and that is of course, what foreign sovereign immunity is for. It's what it's about. I'd like it. I just want to make the point that the shoe could very easily be on the other foot. Our government relies on companies as well to provide things like technology. And there could be a case where our government uses technology somewhat like the technology here. I don't know if our government uses this precise technology or technology like it, but our government uses all kinds of technology, provide provided and supplied by contractors in a national security investigation to respond to a terrorist incident in a foreign country involving us citizens. If our government can't be sued for that conduct, because that's core sovereign conduct. But if a plaintiff could sue the technology provider and get at that same conduct, cause the same foreign relations concerns, the same comedy concerns by simply suing the technology provider and saying that the technology provider should have to defend because the U S government conducted its investigation in a way that's improper. Well, that would be an obvious and run around foreign sovereign immunity. And that's what this case is. The other side is open. I'm speaking for the panel here, but I think we all probably appreciate the significance of the issues that you're talking about and the implications of these issues. What I'm left struggling with is sort of where I was at the beginning of that's all true, but shouldn't we have some sort of a signal from the state department, from the executive branch about to guide those considerations instead of us as a court, just, you know, Sort of leaping out into a whole brand new area that from my perspective, we haven't gone, nobody's gone here yet without any lead from the executive branch. So judge Schanzer, the most recent and most on point, I'm not going to overstate it. It's not directly on point, but the most recent and most on point signal from the United States government is in the amicus brief that my friend mentioned in the CACI versus Al-Shamari case and the Supreme court from about six months ago. So note one, that's a brief. It's not about foreign sovereign immunity. It's about a domestic contractor defense, but footnote one in that brief, the United States took pains, even though the case wasn't about foreign sovereign immunity to say, we don't have to address here because this isn't a foreign sovereign immunity case, whether U S contractors like CACI would be immune in foreign courts from proceedings involving their work on behalf of the U S government. And so the U S government, you know, to be sure it didn't say absolutely. NSO is right. You know, the way we look at the conduct based immunity here for agents is right, but that's the closest that the U S government has come to addressing the question, whether entities are eligible for foreign sovereign immunity. And in the context of that brief, if your honors look at that footnote in context, it sure looks like the government is suggesting that they would be in an appropriate case. And restatement 66 F seems to set out the standard that this court has applied in many other courts have applied in the U S government and has largely supported, although, you know, preserving the wiggle room to argue for a somewhat different analysis in the appropriate case. And under that standard, this case seeks to enforce a rule of law against NSOs foreign state customers, because it seeks to have a court declare the investigations that those States conducted to be illegal. And unless the court makes that declaration, there can't possibly be any liability by NSO because NSO didn't do anything that injured the plaintiffs, even on the plaintiff's own telling other than through the foreign States use of NSOs technology. So this case is an end run around foreign sovereign immunity, and it is important to recognize that the shoe could be on the other foot. That's why we have foreign sovereign immunity. And that's why important, why it's important for this court to reverse here. If your honors have no further questions, I thank you for your indulgence with the clock. Thank you. Thank you, Mr. Buckholz. Significant matter. We understand that and appreciate the oral arguments presented by, by you, Mr. Buckholz and by you, Mr. Treven. Thank you so much. The case of what's app versus NSO group technologies limited is submitted. And that concludes our oral argument counter for today. Thank you all very much. We are adjourned. Thank you. United States court of appeals for this session stands adjourned.
judges: Murguia, Nelson, Hunsaker